UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VAN NATTA, et al.,
    Plaintiffs,

v.

GREAT LAKES REINSURANCE (UK) SE,
    Defendant.

No. 3:18-cv-438 (SRU)

## ORDER

In this case, Steven Van Natta and his mother Liette Van Natta (together, the "Plaintiffs") sue Great Lakes Reinsurance (UK) SE, now known as Great Lakes Insurance SE ("Great Lakes"), for breach of an insurance contract (the "Policy"). Great Lakes has refused to provide insurance coverage for severe water and mold damage to the Plaintiffs' property, which Steven Van Natta used as a second home.[1] Indeed, Great Lakes moved for summary judgment on the Plaintiffs' breach of contract claim based on two exclusions under the Policy. *See* Mot. for Summ. J., Doc. No. 44. On May 21, 2020, I granted in substantial part and denied in part Great Lakes's motion for summary judgment. *See* Ruling, Doc. No. 69. On May 28, 2020, the Plaintiffs made the instant motion for reconsideration. *See* Mot. for Reconsid., Doc. No. 71. On June 5, 2020, Great Lakes filed an opposition. *See* Great Lakes's Opp'n, Doc. No. 72. On June 19, 2020, the Plaintiffs filed a reply. *See* Pls.' Reply, Doc. No. 74. For the following reasons, the Plaintiffs' motion for reconsideration, doc. no. 71, is **denied**.

---

[1] For a fuller factual recitation, *see* Ruling, Doc. No. 69, at 3–15; *Van Natta v. Great Lakes Reinsurance (UK) SE*, 2020 WL 2572765, at *2–7 (D. Conn. May 21, 2020).

**I.      Standard of Review**

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (cleaned up). The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (cleaned up) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (cleaned up) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

**II.     Discussion**

   A. <u>My Prior Ruling</u>

In support of its motion for summary judgment, Great Lakes argued that (1) the Policy's Freezing Exclusion applied to bar coverage, (2) the Policy's Mold Exclusion applied to bar coverage, and (3) the Plaintiffs' damages were speculative. Regarding issues (1) and (3), I denied Great Lakes's motion for summary judgment. But, regarding issue (2), I granted Great Lakes's motion for summary judgment in substantial part. Only my ruling with respect to issue (2)—the Mold Exclusion—is at issue on this motion for reconsideration.

   The Mold Exclusion reads:

   Notwithstanding any other provision in this Policy, there is no coverage . . . for any loss or damage involving in any way the actual or potential presence of mold, mildew or fungi of any kind whatsoever, whether or not directly or indirectly caused by or resulting from an insured peril.

Policy, Doc. No. 44-26, at 8.  The parties mainly disagreed regarding whether the Mold Exclusion applied to the loss in this case and, if it did, whether it was enforceable.  *See* Ruling, Doc. No. 69, at 23–24.  More specifically, Great Lakes argued that the Mold Exclusion was an anti-concurrent causation ("ACC") clause and that "most courts, including courts in Connecticut, routinely apply ACC clauses to 'mean that where a loss results from multiple contributing causes, coverage is excluded if the insurer demonstrates that any of the concurrent or contributing causes of loss are excluded by the policy.'"  *See id.* at 23 (quoting *Thurston Foods, Inc. v. Wausau Bus. Ins. Co.*, 2019 WL 2075880, at *3 (D. Conn. Mar. 6, 2019)).  Great Lakes argued that because mold was one cause of the loss in this case, the entire loss was excluded.

On the other hand, the Plaintiffs argued that the Mold Exclusion simply did not apply to the loss in this case because "the Property required remediation due to the water damage, irrespective of the mold damage."  *See id.* at 24.  Even if the Mold Exclusion did apply, the Plaintiffs argued that I should agree with the minority of courts that have held that ACC clauses are not enforceable because such clauses, under the circumstances, were ambiguous or ran counter to public policy.  *See id.* at 23–24.

I did not construe the Mold Exclusion as an ACC clause in large part because its language did not mirror the language of a typical ACC clause.  *See* Ruling, Doc. No. 69, at 24; *Lombardi v. Universal N. Am. Ins. Co.*, 2015 WL 600823, at *2 (Conn. Super. Ct. Jan. 21, 2015) ("We do not insure for loss caused directly or indirectly by [uncovered peril].  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.").  The fact that the Mold Exclusion was not a typical ACC clause was "especially important," I said, because Great Lakes had included a typical ACC clause elsewhere in the Policy.  *See* Ruling, Doc. No. 69, at 24.  Thus, rather than construing the Mold Exclusion as an

3

ACC clause, I simply construed the Mold Exclusion "according to its unambiguous, plain terms." *Id.* I explained that the Mold Exclusion boiled down to the simple sentence: "[T]here is no coverage . . . for any loss or damage involving in any way the actual . . . presence of mold." *Id.* at 24–26. I concluded:

> Great Lakes is entitled to summary judgment with respect to any loss or damage that every reasonable juror would conclude involves the presence of mold in any way. On the other hand, Great Lakes is not entitled to summary judgment for any loss or damage that a reasonable juror could conclude did *not* involve the presence of mold in any way. The question becomes: What parts of the Loss involved the presence of mold in any way?

*Id.* at 26. I then explained in detail which portions of the loss every reasonable juror would conclude involved the presence of mold in any way, and I granted Great Lakes's motion for summary judgment with respect to those portions of the loss. *See id.* at 26–30.

### B. Parties' Arguments

The Plaintiffs agree with my conclusion that the Mold Exclusion is not an ACC clause. *See* Mot. for Reconsid., Doc. No. 71, at 3, 7. However, the Plaintiffs argue that my decision to give effect to the unambiguous terms of the Mold Exclusion was error because I "overlooked, and thus did not apply, Connecticut's Efficient Proximate Cause Test." *Id.* at 4. Pursuant to the efficient proximate cause doctrine, "[i]n the determination whether a loss is within an exception in a policy, where there is a concurrence of two causes, the efficient cause—the one that sets the other in motion—is the cause to which the loss is to be attributed, though the other cause may follow it and operate more immediately in producing the disaster." *Frontis v. Milwaukee Ins. Co.*, 156 Conn. 492, 499 (1968). Generally, ACC clauses "in insurance policies are an attempt to contract around the general application of the Efficient Proximate Cause [doctrine]." Mot. for Reconsid., Doc. No. 71, at 7.

The Plaintiffs stress that I should have applied the efficient proximate cause doctrine here because "(1) when there are two concurrent causes of loss (one of which is covered and the other [of] which is excluded) (here, water and mold) and the (2) policy at issue does *not* contain an anti-concurrent [causation] clause, the insurer must look to the efficient proximate cause in determining whether a loss is covered under the policy." Pls.' Reply, Doc. No. 74, at 2. Because the "efficient proximate cause of the loss was water saturation, and not mold," the Plaintiffs argue, I should have denied Great Lakes's motion for summary judgment based on the Mold Exclusion. Mot. for Reconsid., Doc. No. 71, at 4, 11–12.

Although they concede that no court in Connecticut has "applied the efficient proximate cause test to a loss involving mold and water," Pls.' Reply, Doc. No. 74, at 5, the Plaintiffs believe that the rationale behind the efficient proximate cause doctrine extends to cover this case. To make that point, the Plaintiffs detail the history of the efficient proximate cause doctrine in Connecticut. *See* Mot. for Reconsid., Doc. No. 71, at 7–11. In particular, the Plaintiffs point to three Connecticut Supreme Court cases.

In *Fogarty v. Fid. & Cas. Co.*, a small fire ignited inside the cab of the insured's truck. 120 Conn. 296, 298 (Conn. 1935). The driver became distracted and veered off the road and down a steep embankment, some 75 to 100 feet high. *See id.* The crash caused the truck's gas tank to rupture, and the truck was incinerated. *See id.* The insured submitted a claim under the relevant automobile insurance policy, which insured against loss "caused by collision with any object or by upset" but excluded loss caused by fire. *Id.* at 298–99. The *Fogarty* Court explained that "when there is no order of succession in time, when there are two concurrent causes of a loss, the predominating efficient one must be regarded as the proximate, when the damage done by each cannot be distinguished." *Id.* at 304 (cleaned up). Because the damage

5

from the collision and from the fire in this case could not be segregated, the *Fogarty* Court applied that "efficient proximate cause" test and found that "the impact of the truck with the earth at the bottom of the bank and the upset was the 'predominantly efficient' cause" of the loss. *Id.*

In *Frontis*, a fire in an adjacent building deteriorated the stability and necessary lateral support of the insured's building, such that the city's building inspector ordered that the top two floors of the insured's building be removed. 156 Conn. at 493–95. The defendant insurer argued that the cost of removing those two floors was not covered under the relevant fire insurance policy, which covered "direct loss by fire" but excluded "loss caused directly or indirectly by order of any civil authority." *Id.* at 495–98. The *Frontis* Court explained that "[i]n the determination whether a loss is within an exception in a policy, where there is a concurrence of two causes, the efficient cause—the one that sets the other in motion—is the cause to which the loss is to be attributed." *Id.* at 499. Because the efficient proximate cause of the loss in this case was fire, the *Frontis* Court held that the loss was covered. *Id.* at 500.

In *Edgerton & Sons, Inc. v. Minneapolis Fire & Marine Ins. Co.*, an insured was driving a truck to deliver a commercial lathe to a customer. 142 Conn. 669, 670 (1955). When passing under a bridge, the insured pulled to the right of his lane to avoid an oncoming vehicle and the truck's tire struck a cement culvert. *Id.* at 672. In attempting to get the truck back on the road, the truck "bounced up and the top of the lathe came into contact with the under surface of the bridge"; the lathe was damaged. *Id.* The relevant motor vehicle cargo policy covered damage from "accidental collision of the vehicle with any other automobile, vehicle or object," but it excluded "loss or damage caused directly or indirectly by the load or any portion thereof coming into contact with any other object unless the carrying vehicle also collides with such object." *Id.*

6

at 671.  The *Edgerton* Court explained that "[w]hile the striking of the load against the bridge can be said to have been the immediate cause of the damage to the lathe . . . the predominating efficient cause was the truck's coming into contact with the culvert."  *Id.* at 673–74.  As a result, the *Edgerton* Court held that the exclusion did not apply because "[t]he noninsuring clause does not remove the coverage afforded by the general insuring clause."  *Id.* at 674.

The Plaintiffs emphasize that the Connecticut Supreme Court has thus applied the efficient proximate cause doctrine even when the relevant exclusions "were broadly worded and applied to circumstances where the excluded peril was merely an 'indirect' cause."  Mot. for Reconsid., Doc. No. 71, at 10.  Similarly here, the Plaintiffs argue:  Although the Mold Exclusion is broad and excludes coverage for loss caused even indirectly by mold, the efficient proximate cause doctrine should apply because "the noninsuring clause does not remove the coverage afforded by the general insurance clause."  *Id.* at 11 (quoting *Edgerton*, 142 Conn. at 674).  Again, although they concede that no Connecticut court has applied the efficient proximate cause doctrine in the factual situation at issue here, the Plaintiffs note that two courts in other jurisdictions have held for plaintiffs in analogous circumstances.  *See id.* at 12 (citing *Kelly v. Farmers Ins. Co., Inc.*, 281 F. Supp. 2d 1290, 1298 (W.D. Okla. 2003); *Shelter Mut. Ins. Co. v. Maples*, 309 F.3d 1068, 1070–71 (8th Cir. 2002)).[2]

Great Lakes responds first that the Plaintiffs' motion does not raise an issue cognizable on a motion for reconsideration because it simply raises a new argument.  *See* Great Lakes's Opp'n, Doc. No. 72, at 2, 4 (citing Mot. for Reconsid., Doc. No. 71, at 13 n.21).  Neither the complaint in this matter nor the Plaintiffs' opposition to Great Lakes's motion for summary

---

[2] *Kelly* is addressed below, but *Shelter* is inapposite.  In *Shelter*, the Eighth Circuit held that an exclusion that read "we do not cover loss caused by . . . mold" did not validly contract around the efficient proximate cause doctrine.  *See* 309 F.3d at 1071.  The Mold Exclusion in this case is much more substantial than that simple clause.

7

judgment mentioned "efficient proximate cause" or the theory that the loss is covered because water was the efficient proximate cause of the loss. *See id.* at 4. Indeed, according to Great Lakes, not only are the Plaintiffs advancing a new argument—they are advancing an argument in significant tension with their argument in opposition to summary judgment. At that stage, the Plaintiffs argued that "the water damage was separate and distinct from, and not concurrent with[,] the mold damage that occurred later and therefore the exclusion should not negate coverage." *Id.* at 7 (citing Pl.'s Opp'n, Doc. No. 53, at 15–17).[3]

On the merits, Great Lakes argues that the Plaintiffs' motion for reconsideration should fail because the authority they cite is inapposite. More particularly, Great Lakes points out that both *Fogarty* and *Frontis* "are fire loss cases involving *concurrent* causes of loss, or causes that cannot be segregated." *Id.* at 4. Further, in *Frontis*, the Connecticut Supreme Court "did not even consider . . . the defendant's argument that the loss was excluded under the policy exclusion for loss caused directly or indirectly by order of any civil authority," and instead "focused purely on whether the removal of two stories was a direct loss of the fire." *Id.* at 5. Great Lakes also distinguishes *Edgerton* on the basis that *Edgerton* involved truly concurrent causes of loss, whereas, in this case, water damage significantly preceded mold damage, which was a "separate and independent intervening cause of the damage." *See id.* at 6–7. Great Lakes sums up: "The cases plaintiffs cited, where the damage done by each cause of loss cannot be distinguished, simply do not apply to this loss." *Id.* at 7.

---

[3] The Plaintiffs dispute that they raise a new argument in their motion for reconsideration. Instead, they argue that their motion "was submitted in light of this Court's finding that the Mold Exclusion is not an 'anti-concurrent' clause." Pls.' Reply, Doc. No. 74, at 1. The Plaintiffs argue that they have not adopted contradictory positions. They concede that the water and mold damage did not happen concurrently in the sense that they happened at the same *time*, but they *did* happen concurrently in the sense that they happened as part of the same unbroken chain of events. *See id.* at 3.

In my view, the Plaintiffs' motion for reconsideration does not regard an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways*, 956 F.2d at 1255.  In fact, I agree with Great Lakes that the Plaintiffs seem to raise a new argument in their motion for reconsideration.  The Plaintiffs' opposition to Great Lakes's motion for summary judgment did not mention the efficient proximate cause doctrine.  *See* Pls.' Opp'n, Doc. No. 53.  Still, I will consider the Plaintiffs' motion for reconsideration on the merits.  First, the Plaintiffs' failure to discuss the efficient proximate cause doctrine was somewhat understandable, as the parties apparently assumed that I would construe the Mold Exclusion as an ACC clause.  *See* Great Lakes's Mem. in Supp. Mot. for Summ. J, Doc. No. 44-24, at 21; Great Lakes's Reply, Doc. No. 60, at 18–26; Pls.' Opp'n, Doc. No. 53, at 15–17 (discussing Mold Exclusion's anti-concurrent language).  Second, addressing the Plaintiffs' motion allows me to explain more fully why, in my view, I did not make a "clear error" that I must correct.

  C. <u>The Mold Exclusion Can Be Enforced According to Its Terms.</u>

  In my view, the Plaintiffs misstate the law.  The Plaintiffs write:  "Connecticut law requires that (1) when there are two concurrent causes of loss (one of which is covered and the other [of] which is excluded) . . . and the (2) policy at issue does *not* contain an anti-concurrent [causation] clause, the insurer must look to the efficient proximate cause in determining whether a loss is covered under the policy."  Pls.' Reply, Doc. No. 74, at 2.  The second prong of the Plaintiffs' formulation is incorrect because it assumes that the only way to contract around the efficient proximate cause doctrine is through an ACC clause.

  To be sure, ACC clauses are clear attempts to contract around the efficient proximate cause doctrine.  *See* Dale Joseph Gilsinger, *Validity, Construction, and Application of*

9

*Anticoncurrent Causation (ACC) Clauses in Insurance Policies*, 37 A.L.R. 6th 657 (2008) ("An anticoncurrent causation clause in an insurance policy is an attempt to contract around the doctrines of 'concurrent cause' and 'efficient proximate cause . . . .'").  But, in my view, a typical ACC clause is not the *only* way to contract around the efficient proximate cause doctrine.  Rather, parties may contract around the efficient proximate cause doctrine through *express* and *unambiguous* contractual language evidencing their intent to do so.  *See, e.g.*, *Farrell v. Royal Ins. Co. of Am.*, 989 F. Supp. 159, 164 (D. Conn. 1997) ("[U]nder an all risk policy where the efficient cause of loss is a covered risk, coverage is not defeated merely because an excluded risk contributed to the loss or constituted the loss (*unless the policy expressly excludes such loss regardless of the antecedent cause*).") (emphasis added).  The Plaintiffs' argument—that in the absence of an *ACC clause* I must apply the efficient proximate cause doctrine—is too narrow and formalistic.  Rather, in the absence of *express language to the contrary* (which represents the parties' intent),[4] I must apply the efficient proximate cause doctrine.

It is an open question whether language in an insurance contract such as that contained in the Mold Exclusion is sufficient to contract around the efficient proximate cause doctrine.  However, I am aware of numerous courts that, when ruling in similar circumstances, have agreed with me and held that language quite similar to the language in the Mold Exclusion—that is, language different from a typical ACC clause—validly contracts around the efficient proximate cause doctrine.  *See, e.g.*, *De Bruyn v. Superior Court*, 158 Cal. App. 4th 1213, 1224–25 (2008) (holding that policy validly contracted around California's efficient proximate cause doctrine by

---

[4] "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." *Hammer v. Lumberman's Mut. Cas. Co.*, 214 Conn. 573, 583 (1990) (quoting *Schultz v. Hartford Fire Ins. Co.,* 213 Conn. 696, 702 (1990)) (cleaned up).  "The determinative question is the intent of the parties, that is, what coverage the . . . plaintiff expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy." *Id.* (cleaned up).  "If the words in the policy are plain and unambiguous . . . the language . . . must be accorded its natural and ordinary meaning." *Id.* (cleaned up).

10

excluding loss from mold "even if resulting from" a covered peril); *Polk v. Landings of Walden Comm. Ass'n*, 2005 WL 1862126, at *6 (Ohio Ct. App. 2005) (holding that policy that did not insure for loss "caused by" mold unambiguously excluded mold coverage "regardless of the initial or efficient proximate cause of the mold itself"); *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678, 684–86 (Colo. 1989) (en banc) (holding that policy exclusion that excluded loss "caused by, resulting from, contributed to, or aggravated by" certain exclusions validly contracted around the efficient proximate cause doctrine); *Nat'l Am. Ins. Co. v. Gerlicher Co., LLC*, 260 P.3d 1279, 1286–87 (Okla. Ct. App. 2011) (holding that policy that excluded coverage for loss that "arises out of, is caused by, or is attributable to" a particular exclusion "avoids application of the efficient proximate cause doctrine"); *cf. Thomas v. Farmers Ins. Co., Inc.*, 2018 WL 701813, at *5–6 (N.D. Okla. Feb. 2, 2018) (giving effect to unambiguous language resembling an ACC clause—but *not* describing or construing it as an ACC clause). To be sure, some other courts have suggested that only typical ACC clauses can validly contract around the efficient proximate cause doctrine. *See, e.g.*, *Kelly*, 281 F. Supp. 2d at 1298–1301. But the diverging views that I have just articulated evidence only that this is an open question—not that I made a clear error.

Neither does case law from Connecticut suggest that I made a clear error in interpreting the Mold Exclusion according to its clear and unambiguous terms. The Connecticut Supreme Court cases on which the Plaintiffs rely—*Frontis*, *Fogarty*, and *Edgerton*—certainly establish that the efficient proximate cause doctrine exists in Connecticut, but they are inapposite and do not control my decision here. None of those cases dealt with language similar to the Mold Exclusion in this case. Further, none of those cases is factually analogous to this case.[5]

---

[5] As described above, in *Fogarty* and *Edgerton*, both car crash cases, the causes of loss took place extremely close in time. In this case, Steven Van Natta was absent from the Property for at least one month, which is when the loss occurred. *See* Ruling, Doc. No. 69, at 22. In *Frontis*, the causes of loss—fire (covered) and order of a civil authority (uncovered)—bore a relationship far different from the causes of loss in this case—water

11

Indeed, more generally, there is a dearth of Connecticut case law addressing whether and how parties to insurance contracts may contract around the efficient proximate cause doctrine. Regarding issues of unsettled state law, a federal court "must carefully predict how the state's highest court would resolve the uncertainty or ambiguity," and, "[i]n making this prediction," a federal court should "give the fullest weight to pronouncements of the state's highest court . . . while giving proper regard to relevant rulings of the state's lower courts." *Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 78 (2d Cir. 1999) (cleaned up). So far as I am aware, no appellate court in Connecticut has yet ruled on the enforceability of a typical ACC clause. However, I suspect that the Connecticut Supreme Court, when it reaches the issue, will conclude that ACC clauses are enforceable, and I agree with lower Connecticut courts that have already held the same.[6] *See Thurston Foods*, 2019 WL 2075880, at *4–5; *Lombardi*, 2015 WL 600823, at *15; *Union Street Furniture and Carpet, Inc. v. Peerless Indem. Ins. Co.*, 2013 WL 3871395, at *5–6 (Conn. Super. Ct. July 3, 2013); *see also* Gilsinger, *Validity, Construction, and Application*, 37 A.L.R. 6th 657 ("[T]he vast majority of jurisdictions have determined that enforcement of an ACC clause to bar coverage when a loss was caused by a combination of covered and excluded perils is not precluded by case law, statute, or public policy."); *Boazova v. Safety Ins. Co.*, 462 Mass. 346, 357 (2012) ("[T]he vast majority of States that have considered the matter have upheld and applied anticoncurrent cause provisions when construing the language of insurance policies.") (cleaned up).

---

(covered) and mold (uncovered). The building inspector's decision to demolish two stories of a building in *Frontis* was a discretionary decision based on the interests of public safety. That is far afield from mold growth, which is a biological reaction.

[6] I have already, in another case, suggested that I would give effect to an ACC clause. *See Mazzarella v. Amica Mut. Ins. Co.*, 2018 WL 780217, at *5 (D. Conn. Feb. 8, 2018).

Admittedly, it is more difficult to predict whether the Connecticut Supreme Court will, in the proper case, hold that language akin to that contained in the Mold Exclusion is sufficient to contract around the efficient proximate cause doctrine. That is because no lower Connecticut court decisions, so far as I am aware, have addressed that issue, and, as described above, courts in other jurisdictions seem split on the question. However, even though it is a closer call, I have already explained why I agree with the courts that hold that parties can contract around the efficient proximate cause doctrine through language other than a typical ACC clause. In addition, I note that the Plaintiffs themselves have acknowledged the similarities between the Mold Exclusion and a typical ACC clause: In their opposition to Great Lakes's motion for summary judgment, the Plaintiffs assumed that I would treat the Mold Exclusion as an ACC clause—their argument cited cases regarding ACC clauses—and twice noted that the Mold Exclusion contained "anti-concurrent language." Pls.' Opp'n, Doc. No. 53, at 16–17.

To the extent that the Plaintiffs challenge the enforceability of the Mold Exclusion on the basis of the insured's reasonable expectations, I reject that challenge. It is true that, "in general, courts will protect the reasonable expectations of . . . insureds . . . regarding the coverage afforded by insurance contracts." *Nationwide Mut. Ins. Co. v. Pasiak*, 327 Conn. 225, 258 (quoting *Hansen v. Ohio Cas. Ins. Co.*, 239 Conn. 537, 544 (1996)) (cleaned up). But that observation does not change the analysis. In this case, enforcing the Mold Exclusion does not impermissibly interfere with the reasonable expectations of the insured as gleaned from other parts of the Policy. The only other part of the Policy that mentions mold notes that mold is uncovered: "[W]e do not insure . . . for loss . . . caused by . . . [m]old" (subject to an exception not applicable here). Policy, Doc. No. 44-26, at 29–30. There is no reason why a reasonable insured would believe that mold was covered under the Policy.

### III.     Conclusion

In sum, I adhere to my holding that the Mold Exclusion is enforceable and that it expressly and unambiguously excludes coverage for "any loss or damage involving in any way the actual . . . presence of mold."  *See* Ruling, Doc. No. 69, at 26.  Thus, the Plaintiffs' motion for reconsideration, doc. no. 71, is **denied**.


So ordered.

Dated at Bridgeport, Connecticut, this 1st day of September 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge